**CONTINENTAL CASUALTY COMPANY, Appellant,**

**v.**

**Vernon CARLISLE, Jr., Appellee.**

**No. 7460.**

Court of Civil Appeals of Texas.

Amarillo.

April 26, 1965.

Rehearing Denied May 24, 1965.

Evans, Pharr, Trout & Jones, Lubbock, for appellant.

Splawn & Maner, Lubbock, for appellee.

NORTHCUTT, Justice.

This is a suit brought by Vernon Carlisle, Jr., for recovery of total disability benefits provided in two insurance policies issued to him by Continental Casualty Company. One policy was denominated RP Accident No. 9869346 and the other was denominated Accident and Health Policy No. 9869347. The main portion of the policies here involved is as follows:

"*Total Disability*. When, as the result of injury and commencing within thirty days after the date of the accident, the insured is wholly and continuously disabled and prevented from performing each and every duty pertaining to his occupation, the company will pay periodically the monthly indemnity stated in the schedule for the period the insured is so disabled, not to exceed twelve consecutive months. Subject to the 'Maximum Period Total Disability Indemnity' stated in the schedule and after the payment of monthly indemnity for twelve months as aforesaid, the Company will continue the periodic payment of monthly indemnity so long as the Insured is wholly and continuously disabled and prevented by reason of said injury from engaging in each and every occupation or employment for wage or profit for which he is reasonably qualified by reason of education, training or experience."

The case was submitted to a jury upon special issues. In answer to the issues the jury found that Carlisle was injured on October 30, 1962; that the injuries sustained caused total incapacity so that Carlisle could not engage in his regular occupation as a moving van operator and that he was totally incapacitated so that he could not reasonably perform his duties as a moving van operator for a period of seventeen

months. The jury found Carlisle's injury on October 30, 1962, caused total incapacity from October 30, 1963, up until March 31, 1964, being the date of the trial, preventing him from performing any occupation for wage or profit taking into consideration his experience, training, and capabilities and that said capacity was caused solely by the injury received on October 30, 1962. Upon a verdict of the jury, judgment was granted in favor of Carlisle. From that judgment Continental Casualty Company perfected this appeal and will hereafter be referred to as appellant.

Appellant presents this appeal upon six points of error. Point One contends that there was no evidence to support the finding of the jury that Carlisle was totally incapacitated so that he could not reasonably perform his duties as a moving van operator for a period of seventeen months. Point Two is to the same effect only that such findings by the jury were contrary to the overwhelming weight of the evidence. Points Three and Four contend there was no evidence to sustain the verdict of the jury and that such finding by the jury was contrary to the overwhelming weight of the evidence that Carlisle's injury had caused total incapacity since October 30, 1963. Points Five and Six contend there was no evidence to sustain the verdict of the jury and that such finding by the jury was contrary to the overwhelming weight of the evidence that Carlisle was totally incapacitated from performing any occupation for wage or profit from October 30, 1963, to March 31, 1964.

The undisputed evidence shows that Carlisle worked and drew good wages during the most of 1963 and some during the first of 1964. In determining the questions here involved as to the finding being contrary to the overwhelming weight of the evidence, we must consider all the evidence supporting the verdict and weighing it along with the other evidence in the case including that which is contrary to the verdict to determine whether the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this regardless of whether the record contained some evidence of probative force in support of the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. As to appellant's contention of no evidence to support the jury verdict, we must consider only that evidence, if any, which viewed in the most favorable light supports the jury findings and must discard all evidence which would lead to a contrary result. Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359.

It is stated in Metropolitan Life Ins. Co. v. Wann, 130 Tex. 400, 109 S.W.2d 470, 115 A.L.R. 1301 (opinion adopted by S.Ct.) as follows:

"No general rule can be announced governing the question of when one is totally disabled to pursue a gainful occupation. The term total disability is relative depending, among other things, upon the capabilities of the insured. No distinction is made by the courts between an accident policy and a life insurance policy containing a disability clause. An injury which might render an uneducated laboring man unable to pursue a gainful occupation might not impair at all the ability of a professional or business man to do so. Kemper v. Police & Firemen's Ins. Ass'n (Tex.Com.App.) 44 S.W.(2d) 978; Winters Mutual Aid Association Circle v. Reddin (Tex.Com.App.) 49 S.W.(2d) 1095; Great Southern Life Ins. Co. v. Johnson (Tex.Com.App.) 25 S.W.(2d) 1093; Buis v. Prudential Ins. Co., 229 Mo.App. 190, 77 S.W.(2d) 127; Duhaime v. Prudential Ins. Co., 86 N.H. 307, 167 A. 269; Aetna Life Ins. Co. v. Person, 188 Ark. 864, 67 S.W.(2d) 1007.

"The evidence in this case raised a fact issue for the jury, and the contention that only a question of law is presented cannot be upheld."

Appellant does not contend Carlisle received no injury nor does it contend that he was not incapacitated for a short time from October 30, 1962, to February 9, 1963. The evidence here relied upon by appellant to defeat the findings of the jury as to Carlisle's incapacity is based upon the fact that he worked most all of 1963 and a short time in 1964 and made good wages and from the further fact that he joined a bowling league and bowled twice in September and twice in October of 1963.

Carlisle testified in part as follows: Before going to work for North American Van Lines he took a physical examination by a doctor of his employer's choice and worked for them from February 1962 until he was injured on October 30, 1962. His work for the North American Van Lines required lifting and handling heavy articles such as pianos, ice-boxes, and general household articles and he had no trouble in carrying on such work but was never able after being injured to perform such duties. At the time of his injury he was on his way from Laredo, Texas, to California and while straightening part of his load on the truck he fell from the truck to the ground, a distance of eight to ten feet and struck on his neck, shoulders and left arm. After being injured, he called a taxi and went to the hospital at Las Cruces where they gave him some pills as he didn't think he was hurt. He went to the same hospital the next morning where he was X-rayed and given shots for pain that kept him easy for two days, as his legs were numb and his back, arm and shoulder were hurting awfully badly. After two days, he was transferred to the Methodist Hospital at Lubbock, Texas, where he was treated by Doctors Lewis and Dunn and was placed in traction and was treated by exercise, heat treatment and massage twice a day. He suffered all the time and has to take medicine to relieve the pain. At the time of the trial the doctor had him taking one-half grain morphine. He had never had any trouble with his back during the nine months he worked for North American Van

Lines. He is not able to carry on the trucking and moving work since his injury because he cannot lift the articles he had to move and cannot climb and pack the furniture as was required and besides he could not drive or ride in a truck. His condition is growing worse. About three and one-half months after his injury he tried to keep books for a gin company and after about a week at that job the gin people wanted him to go out and sell fertilizer. It was so painful taking the fertilizer out to sell he could not stand the pain and after about sixty-five days he just could not stand the pain. He had been taking medicine ever since he was hurt and has had the family doctor to come out at night and give him shots so he could rest. After that he got a job to align front end of cars but there were two other men who did all the lifting. He was not working there anymore because he had gone as far as he could.

We have narrated this testimony of Mr. Carlisle rather than to give the "Question and Answer" for the purpose of saving space.

Other witnesses that had known Mr. Carlisle for several years testified as to his changed condition and knowing he had trouble getting in and out of a car, that he limped and had a hard time getting up and down or trying to stoop. Mr. Evans, a ginner, had known Carlisle ever since 1953 and worked with him and knew he was a good hand, one of the best, and knows that he limps now and had a hard time getting out of a car. Dr. Johns testified in December of 1962 he called on Mr. Carlisle, who was complaining of pain. At the request of Carlisle he gave him an injection of codeine and has okayed refills periodically. Dr. Johns further testified that since his first visit in December 1962 he had seen Carlisle and as a physician it was evident to him that Carlisle was suffering from debilitating disease that is progressive apparently. In defining what he meant by debilitating disease and progressive the doctor testified from his professional opinion that Carlisle

had a ruptured herniated intervertebral disc that was the basis of his difficulty; then testified Carlisle was not able to pursue his normal vocation and seemed to the doctor Carlisle was getting worse. Mrs. Carlisle testified as to his condition and inability to sleep and having to be rubbed and used heat treatment and take sedatives in order to rest and his general condition and inability to work but that they just had to have the money to live on. There was other testimony not here related. The fact that he continued to work after the injury does not preclude a finding by the jury of total and permanent incapacity under the circumstances of this case. Jefferson Standard Life Ins. Co. v. Curfman, Tex.Civ.App., 127 S.W.2d 567 (writ dismissed); Sovereign Camp of the Woodmen of the World v. Douglas, Tex.Civ.App., 172 S.W.2d 982 (writ dismissed).

 To hold there is no evidence to sustain the verdict of the jury we would be compelled to hold the above evidence as outlined was not true or had no bearing on the issues involved. In other words, we may consider only that evidence, if any, which viewed in the most favorable light supports the jury findings and we must disregard all evidence which would lead to a contrary result. Biggers v. Continental Bus System, supra; Dallas Transit Company v. Young, Tex.Civ.App., 370 S.W.2d 6 (N.R.E.).

To hold the verdict is contrary to the overwhelming weight of the evidence we would have to hold that the fact Carlisle worked and bowled a few games is such strong evidence as controlling in this case. But we may not consider that evidence alone but must consider all of the evidence supporting the verdict and weighing it along with the other evidence in the case including that which is contrary to the verdict. As we see this case, the only evidence relied upon by appellant herein as being contrary to the verdict is the fact as to Carlisle's work during 1963 and also bowling a few games. In Re King's Estate, supra.

A policy requiring payment for total disability ordinarily is not one of indemnity against loss of income but against loss of capacity to work. Sovereign Camp of the Woodmen of the World v. Douglas, supra; Cooley's Brief on Insurance (2d Ed.) 5536. Necessity sometimes drives people to do things they prefer not to do and are not able to do. We are not able to say under the facts of this case the jury was wrong in reaching the verdict it did. Neither are we willing to hold Mr. Carlisle is not totally disabled.

Judgment of the trial court is affirmed.