## LaBELLA v. NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE
### Case No. 80-19996
Eleventh Judicial Circuit, Dade County
April 1, 1983

Sidney Margrey, Manners, Amoon and Tucker, James W. Whatley, of counsel, for plaintiff.

Matthew H. Patton, Marc T. Treadwell, Kilpatrick and Cody, and Brenton Ver Ploeg, Shutts and Bowen, for defendant.

JON I. GORDON, Circuit Judge

This action was tried by the court without a jury March 28 through March 30, 1983.

After considering the evidence presented and argument of counsel, the Court enters the following findings of fact, conclusions of law and final judgment.

## I. FINDINGS OF FACT

1. The plaintiff, Robert A. Labella, purchased a policy of disability income insurance from the defendant, North American Company for Life and Health Insurance ("North American") in December 1972. At that time, plaintiff was an Air Traffic Control Specialist with the Federal Aviation Administration ("FAA").

2. On November 7, 1973, the FAA Regional Flight Surgeon disqualified the plaintiff from air traffic control specialist duties. Although the plaintiff argues that his disqualification was "permanent", the applicable law and regulations do not and did not provide for "permanent" disqualification.

3. Upon the plaintiff's disqualification by the FAA, the defendant commenced payment of monthly benefits under the policy of disability income insurance.

4. Prior to commencing work as an air traffic control specialist with the FAA in 1959, the plaintiff had engaged in several occupations, including mechanic, pilot (military and commercial), flight instructor, and naval officer. The plaintiff resigned from the FAA in 1965 and worked for two years as a policeman. As a policeman, he piloted patrol boats and helicopters. The plaintiff returned to work as an air traffic controller specialist in 1967 in Miami, where he worked until his disqualification in 1973.

5. Although the plaintiff was disqualified from air traffic control duties, he continued his employment with the FAA and attended Miami Dade Community College to prepare for another career through the FAA Second Career Training Program. In addition to the education he received at Miami Dade Community College, where he pursued a course of study in Business Administration, the plaintiff is a high school graduate and a graduate of the Academy of Aeronautics where he took a variety of course.

6. Upon the approval of his claim for benefits with the Office of Worker's Compensation Programs (OWCP) in 1975, the plaintiff withdrew from the Second Career Training Program, resigned from the FAA, and began collecting benefits from the OWCP. The plaintiff also receives a total of $800,00 per month from two other insurance carriers pursuant to disability insurance policies.

7. The plaintiff's net worth has increased significantly during his "disability." The plaintiff is an experienced, although unlicensed, residential

building contractor and has profitably built and sold several homes. In addition, the plaintiff has bought and sold real estate at a considerable profit. The plaintiff has actively and successfully managed other investments.

8. The plaintiff has worked as a part-time instructor at Miami Dade Community College. The plaintiff proposed and formulated the program of study which he taught.

9. The medical evidence reveals that the plaintiff is not suffering from any medical condition that prevents his being re-employed. The "treatment" rendered by Dr. Paxton, the plaintiff's private psychiatrist, has been largely ceremonial in nature in that the primary purpose for the plaintiff's visits to Dr. Paxton has been to obtain Dr. Paxton's certification that he was disabled. These certifications were necessary for the plaintiff to continue to receive his OWCP and insurance benefits. Dr. Paxton certified that the plaintiff was disabled from air traffic control specialist duties. However, Dr. Paxton admitted in cross-examination that he is not qualified to render an opinion as to whether the plaintiff is medically disqualified to be an air traffic control specialist and that the plaintiff is not disabled from many other occupations.

10. Dr. Paul Jarrett, a board certified psychiatrist, testified that the plaintiff is not suffering from any disabling emotional or mental illness. Dr. Paxton, moreover, has maintained virtually no records of any treatment or care of the plaintiff despite the testimony of both the plaintiff and Dr. Prexton that there have been over 100 visits during the past eight years.

11. Although the testimony of the parties' respective vocational experts appears at first glance to be in conflict, this conflict is largely illusory. The plaintiff's expert's evaluation of the plaintiff was superficial and based on inadequate and incorrect information. The defendant's expert Dr. Sydney Rudman, on the other hand, based his testimony upon extensive testing, observation and research. His testimony clearly reveals that the plaintiff is now qualified for immediate placement or on the job training in hundreds of jobs, many of which have salaries reasonably comparable to the plaintiff's income at the time of his disqualification in 1973.

12. Donald Mabry, Manager of the Personnel Branch of the FAA's Southern Region testified that the plaintiff is qualified, from a personnel standpoint, to return to work as an air traffic control specialist. Dr. Richard Butler, former Region Flight Surgeon, testified that the plaintiff is qualified, from a medical standpoint, to return to work as an air traffic control specialist in positions which require medical clearance pursuant to the Air Traffic Control Specialist Health Program. Both Mr. Mabry and Dr. Butler testified that not all positions staffed by air traffic control specialists require such medical clearance. The plaintiff

is qualified for these positions even if he does not satisfy the standards of the Air Traffic Control Specialist Heath Program. Further, the plaintiff is qualified to work with the FAA as an air traffic assistant at an annual salary of $21,527.00.

13. North American paid plaintiff benefits for 84 months on his representations that he was disabled from his regular occupation. At the expiration of this 84 month period, the definition of total disability changed, pursuant to the policy, to read:

> "[T]otal disability' means the complete inability of the insured due to injury or sickness, as the case may be, to engage in any and every gainful occupation for which he is reasonably fitted by education, training, or experience, with due regard to prior economic status.

North American determined that the plaintiff was not disabled under this definition of total disability and, therefore, ceased paying benefits. In addition to the definition of total disability, the following policy provision is applicable in determining whether the plaintiff is entitled to benefits:

> If a period of total disability of the insured due to injury or sickness commences while this policy is in force and if such disability requires the regular care of a physician, the Company will periodically pay the Monthly Indemnity for each month throughout which such total disability continues. . . .

## II. CONCLUSIONS OF LAW

1. The plaintiff's burden of proving that he is totally disabled and therefore entitled to benefits consists of three elements.[1] First, the

---

[1] At the pretrial conference, the Court ruled that the plaintiff had the burden of proof in this case. The plaintiff had argued that because the defendant had initially accepted the plaintiff's claim for benefits and then terminated benefits, then North American must shoulder the burden of proving that the plaintiff is no longer entitled to benefits. In support of his argument, the plaintiff relied upon *Fruchter v. Aetna Life Ins. Co.*, 266 So.2d 61 (Fla. 1972). However, *Fruchter* holds that an insurer has the burden of proving that the insured is not entitled to benefits when it acknowledges that the insured falls within the purview of a particular policy provision and then later attempts to argue that the insured no longer meets the requirements of that provision. However, in the present case, North American has never acknowledged that the plaintiff satisfied the definition of "total disability" that is now in issue. Rather, North American relied upon the plaintiff's representations that he was totally disabled in his regular occupation. After eighty-four months, the definition of total disability changed. North American has maintained since that time that the plaintiff does not meet the now applicable definition of total disability. Therefore, the burden of proof lies with the plaintiff. *See, e.g., Connecticut General Life Insurance Co. v. Breslin*, 332 F.2d 928 (5th Cir. 1964) (applying Florida law).

plaintiff must establish that he is completely unable to engage in any and every gainful occupation for which he is reasonably fitted by education, training, or experience, with due regard to prior economic status. Second, the plaintiff must show that this complete inability is due to injury or sickness. And, third, the plaintiff must show that his disability requires the regular care of a physician. The plaintiff has not met his burden of proof with regard to any of these elements.

2. The plaintiff does not dispute that he is qualified for employment in hundreds of gainful occupations. Rather, the plaintiff contends that the policy definition of total disability entitles him to benefits despite the fact that he is so qualified. Specifically, the plaintiff argues that the phrase ''due regard to prior economic status'' means that he is entitled to benefits unless he is qualified to work in a job which will pay him a salary that duplicates the purchasing power of the salary he was earning at the time he was disqualified in 1973.

The mischief of the plaintiff's argument is vividly illustrated by the facts of the present case. The plaintiff is qualified to return to work as an air traffic control specialist. However, the salary of this position may not have kept pace with inflation. Thus, the salary the plaintiff might receive today as an air traffic control specialist may not duplicate the purchasing power of his 1973 salary. Under the plaintiff's construction of the policy, this disparity in purchasing power would mean that he is totally disabled even though he is now qualified to return to work in the very occupation from which he was once disqualified.

3. The clear and unambiguous language of the policy does not require construction. The policy does not in any way purport to insure against loss of income or to guarantee income maintenance. Indeed, the word ''income'' does not appear anywhere within the definition of total disability. Rather, ''total disability'' is defined in terms of the insured's complete inability to engage in any gainful occupation. Moreover, it is well established that disability insurance policies like that in issue here do not insure against loss of income or guarantee income maintenance. Rather, such policies protect an insured from loss of his earning capacity. *Laidlaw v. Commercial Insurance Company of Newark,* 255 N.W.2d 807 (Minn. 1977); *Continental Casualty Company v. Carlisle,* 391 S.W.2d 98 (1965); *Mutual Life Insurance Company of New York v. Barron,* 30 S.E.2d (S.C. 1944); *Dunlap v. Maryland Casualty Company,* 25 S.E.2d 881 (S.C. 1943).

North American does not contend that the plaintiff's ability to engage in *any* occupation renders him ineligible for benefits. The Court's have long applied what is in effect a test of reasonableness in determining whether an insured is totally disabled. Pursuant to this test

of reasonableness, an insured is not totally disabled if his education, training, or experience qualify him to engage in an occupation which will afford him economic gain reasonably related to the economic gain he received from the occupation in which he was engaged at the time his total disability commenced. *Equitable Life Assurance Society of the United States v. Wiggins,* 155 So. 327 (Fla. 1934); *Dunlap v. Maryland Casualty Company, supra; Blackwell v. Prudential Insurance Company of American,* 34 S.E.2d 57 (S.C. 1945).

Applying the definition to the evidence, it is clear that the plaintiff is not totally disabled. The plaintiff is qualified to engage in many gainful occupations which afford an economic gain reasonably related to the economic gain he received in the occupation in which he was engaged in 1973.

4. The plaintiff failed to establish that his alleged inability to work is "due to injury or sickness." Indeed, the medical evidence establishes that the insured is not suffering from any injury or sickness that prevents his engaging in a gainful occupation.

5. Finally, the plaintiff does not suffer from a disability that requires the regular care of a physician.

Even if the plaintiff were suffering from a disability that requires the regular care of a physician, he has failed to avail himself of all reasonable means and remedies to remove his disability as required by law. *Mutual Life Insurance Co. of New York v. Knight,* 178 So. 898 (Fla. 1937). Although he has visited Dr. Paxton, these visits have not been intended to facilitate the recovery of the plaintiff. Rather, Dr. Paxton has merely performed the ceremonial role of signing the insured's various insurance and governmental forms.

6. The Court concludes that the plaintiff has completely failed to meet his burden of proof and therefore is not entitled to benefits under his policy with the defendant.

## III. FINAL JUDGMENT

IT IS ADJUDGED that plaintiff Robert A. Labella, take nothing by this action and that defendant North American Company for Life and Health Insurance go hence without day and recover its costs from plaintiff, to be hereinafter taxed.