FIDELITY AND CASUALTY COMPANY, OF NEW YORK, v. JOHN A.
GETZENDANNER ET AL.

Decided November 4, 1899.

**Accident Insurance—Injury "Wholly Disabling."**

Where an accident policy provided for indemnity for injuries immediately and
wholly disabling and preventing the assured from performing any and every kind of
duty pertaining to his occupation, it was error for the court, in an action thereon,
to charge that if the injury immediately and continuously disabled and prevented
plaintiff from performing any and every kind of duty which was materially essential
to his occupation in a manner reasonably as effective as the same would have been
performed but for the injury, plaintiff was entitled to recover, since this made
partial disability equivalent to total disability. HUNTER, Associate Justice, dissenting.

APPEAL from Tarrant. Tried below before Hon. IRBY DUNKLIN.

*Harris, Etheridge & Knight,* for appellant.

*Flournoy & Altman,* for appellees.

STEPHENS, ASSOCIATE JUSTICE.—The accident policy declared on
insured John A. Getzendanner in the sum of $25 per week against bodily
injuries sustained through external, violent, and accidental means, as
follows, quoting its second clause: "Or if such injuries, independently
of all other causes, shall immediately, continuously, and wholly disable
and prevent the assured from performing any and every kind of duty
pertaining to his occupation, the company will pay the assured the
weekly indemnity before specified, during the continuance of such dis-
ability, but not exceeding fifty-two consecutive weeks."

The occupation of the assured was that of "visiting yards and ranches,
buying and selling cattle not in transit." During the life of the policy,
about January 10, 1897, while engaged in driving a cow on horseback,
the assured, his horse stumbling, fell to the ground, and though there
were then no signs of physical injury, on the first day of March follow-
ing became wholly insane, and has ever since been confined in the lunatic
asylum.

According to the agreed statement of facts, whether this insanity was
caused by the fall from the horse, or whether the assured "for a month
or six weeks after the accident was up and about and attended to his
business," were controverted issues, upon which the testimony would
have sustained a verdict either way.

The fourth paragraph of the agreed statement of facts reads: "The testimony was conflicting as to whether the injuries of the assured resulting from the accident did or did not, independently of all other causes, immediately, continuously, and wholly disable and prevent him from performing any and every kind of duty pertaining to his occupation, but there was sufficient evidence to support a verdict for either party upon this issue."

There was no other controverted issue of fact.

The main contention of appellant is that the court erred in submitting the issue of total disability to the jury, the charge reading:

"If you believe from the evidence that John A. Getzendanner sustained the injury alleged in plaintiff's petition through external, violent, and accidental causes in the manner alleged, and that such injury, independently of all other causes immediately and continuously after such injury was sustained, disabled and prevented said John A. Getzendanner from performing any and every kind of duty which was materially essential to his occupation stated in the insurance policy introduced in evidence, in a manner reasonably as effective as you believe the same would have been performed by said John A. Getzendanner if he had not sustained said injury, then you will find for the plaintiff and intervener against the defendant for the sum of twenty-five dollars per week for each and every week, not to exceed fifty-two consecutive weeks, that said John A. Getzendanner was so disabled. The word 'immediately' in the sense used above and in following portions of this charge refers to the proximity of time with the alleged injury, and means the same as the word 'presently.' The burden is upon the plaintiff and intervener to make out their case by a preponderance of the evidence, and if they have not done so you will find for the defendant.

"You will find for the defendant unless you believe from the evidence that the disability, if any, of John A. Getzendanner alleged in said petition immediately followed the injury, if any; or unless you believe that said injury, if any, independently of all other causes, continuously disabled and prevented said Getzendanner from performing any and every kind of duty materially essential to his occupation in a manner reasonably as effective as you believe he would have performed the same but for said injury; or unless you believe that said injury, if any, was sustained from external, violent, and accidental means."

In so far as this charge instructed the jury that appellee's case would be one of total disability, if the injury complained of prevented him from performing the duties of his occupation "in a manner reasonably as effective as  *  *  *  he would have performed the same but for said injury," it had the effect of making partial disability the equivalent of total disability, and was therefore clearly erroneous. The vice of the charge is in the language just quoted. The cases cited in appellees' brief to sustain the charge, so far from doing so, are quite to the contrary, the language of the policy in on of them (Hohn v. Casualty Company [Mich.], 72 Northwestern Reporter, 1105) being identical with

the clause construed in this case. See also Lobdill v. Association, (Minn.), 71 N. W. Rep., 696.

But whether this error should require a reversal of the judgment is another question. It seems from the condensed statement of facts that the evidence was such that the jury might have found that appellee "for a month or six weeks after the accident was up and about and attending to his business," but might also have found that he was not; but whether or not there was any evidence from which the jury might have found that he was "up and about and attending to his business" less effectively than he would have attended to the same but for said injury, the record is wholly silent. We are therefore unable to determine whether there was any evidence of partial disability, as contradistinguished from total disability. That is to say, the testimony of the witnesses relied on by the appellant may have been to the effect that for six weeks after the accident he was attending to his business in the usual way and as effectively as ever, while that relied upon by appellee may have warranted the jury in finding that he could not and did not attend to it at all after the accident.

The error in the charge, therefore, may have been purely abstract.

We hardly think that we would be warranted in reversing the judgment upon the assumption that there might have been evidence of partial disability, as contradistinguished from total disability. It is incumbent upon the party seeking the reversal of a judgment to show by the record the materiality of the error of which he complains. True, it may be said that, if no such issue was presented by the evidence, that would itself be an insuperable objection to the charge; but we have searched appellant's brief in vain to find any complaint of the charge upon that ground.

None of the other assignments are well taken. The judgment is therefore affirmed.

ON APPELLEE'S MOTION FOR REHEARING.

February 10, 1900.

HUNTER, ASSOCIATE JUSTICE.—Upon a second reconsideration of this case, and a very able reargument of the vital question at issue by appellees' counsel, and the citation of at least one new authority which seems to be in point and upon a policy containing the exact clause under consideration here, I have become convinced that we were in error in condemning the charge of the court as we did in our original opinion. I am now of the opinion that the charge of the court relating to and in effect defining the terms "wholly disabled" as used in the policy was substantially, if not exactly, correct, under the circumstances of this case.

In this case the alleged injury was to the brain, and, as resulting therefrom, unsoundness of mind. The agreed statement of the proof

is that the evidence was sufficient to sustain a finding either that the disability caused by the accident was immediate and *total* or that it was not. The suit was to recover for immediate and *total* disability—not partial. The policy contained no clause promising indemnity for partial diability. The question before us, then, is whether the charge properly submitted this issue to the jury.

The court told the jury that if the jury "immediately and continuously * .* * disabled and prevented Getzendanner from performing any and every kind of duty which was materially essential to his occupation * * * in a manner reasonably as effective as you believe the same would have been performed * * * if he had not sustained said injury, then find for the plaintiff and intervener," and to find for defendant company unless they so believe.

Plaintiff's occupation was that of "visiting yards and ranches and buying and selling cattle," one in which sound memory and clear, good judgment was essential. Now, if the injury to his brain and mind was such as to prevent him from exercising good judgment and drawing correct mental conclusions, "in a manner reasonably as effective" as he could have done if he had not received the injury, then, I think, he was "wholly disabled," within the meaning of the contract, because upon these qualities of the mind depends the successful performance of the duties of his occupation. If he could not perform these mental functions as well as he could before, but substantially or reasonably as well, the disability would be only partial, and he could not recover; but if he *could* perform them, though not *substantially* or *reasonably as effective,* who can say that he could perform them *rightly* and *correctly* at all? He may be able to talk (which would be one of the duties pertaining to his occupation) as well as he ever did,—lunatics do that,—and thus fix and agree upon prices to give or take for cattle, but the memory and judgment being confused or obscured he may agree to give too much or take too little, and thus ruin himself or his employers. And who can say that, being in this condition, he is not "wholly disabled?" One of his duties was to "visit yards and ranches" in the purchasing and selling of cattle. His ability to visit may not have been in the slightest degree affected, but if, when he finds the cattle, his mental condition is such as to render him not reasonably safe and reliable as a purchaser, he would be wholly disabled from performing the duties of his occupation. Nobody knowing his disorder would employ him to buy or sell cattle. If a doctor's mental balance is lost, and it becomes known that he is not reasonably as accurate and skillful as he once was, though he may be able to visit patients, write prescriptions, and diagnose cases with grave and serious mien in the mysterious, technical nomenclature of his profession, yet who, suspecting his mental disorder, would take his medicine? He would be wholly disabled in his profession.

The watch is a timekeeper, but by an accident an axle is bent or a wheel broken, so that sometimes it slips a cog, or a wheel slips upon its axle. It may run as well as before the accident, but fail to keep the

time.   Sometimes it goes too fast; sometimes too slow.   It becomes wholly worthless as a timekeeper.

The compass of an American liner may be accidentally injured, so that its face and needle need adjustment.   It may continue to point out to the pilot his supposed proper course across the trackless waters of the Atlantic, but his ship may founder in the Bay of Biscay, instead of anchoring in its destined port in the mouth of the Mersey.   That compass is wholly disabled for marine service.

The fine rifle may be bent or warped by some accidental injury.   Its shot is as deadly and penetrating as before, but it misses its aim.   It becomes wholly worthless,—fit only for the junk heap.

When the delicate instruments used by astronomers for sweeping the heavens and measuring the distances from star to star receive the slightest injury, they are laid aside as utterly worthless for the observatory.

And so, I think, when those delicate and wonderful faculties comprising the human intellect, which we understand in some mysterious way proceed from that organism known as the brain, become warped and bent and disordered, so that the lamp of reason goes out or flickers low in the socket, the poor unfortunate one thus injured is wholly unfit to perform those high mental functions known to a sound intellectual man, though he may not, like Getzendanner, be condemned to hopeless insanity and despair.

The clause in this policy does not mean that one must be killed or become totally insane immediately, or totally paralyzed or collapsed, in order to be entitled to the indemnity, but only disabled in some manner to the extent that he can not perform some essential duty in the line of his occupation or profession in a reasonably safe, efficient, and profitable manner.   And this question as to the extent of the disability must always be left to the jury to determine.   The adjudicated cases on the subject tend strongly, I think, to this conclusion.

In Young v. Insurance Company, 80 Maine, 244, where the policy against accidents provided that "if the insured shall sustain bodily injuries   *   *   *   which shall, independently of all other causes, immediately and wholly disable and prevent him from the prosecution of any and every kind of business pertaining to the occupation under which he is insured," a certain sum of money should be paid him.   Held, "that, to entitle the insured to recover, he was not required to prove disability to such an extent that he had no physical ability to do anything in the prosecution of his business, but that it was sufficient if he satisfied the jury that his injury was of such character and to such an extent that he was not able to do all the substantial acts necessary to be done in the prosecution of his business."

In Lobdill v. Mutual Aid Association, 71 Northwestern Reporter, 696, the Supreme Court of Minnesota held, where the policy insured the plaintiff against loss of time caused by accidental injuries "wholly and continuously disabling him from transacting any and every kind of business pertaining to his occupation of merchant," that "total disability does

not mean absolute physical inability to transact any kind of business pertaining to the occupation of merchant. It is sufficient if his injuries were such that common care and prudence required him to desist from transacting any such business in order to effectuate a cure."

In the case of Hohn v. Casualty Company, 72 Northwestern Reporter, 1105, the Supreme Court of Michigan held that where the evidence established that "after the injury to a barber, he went to his shop and attempted to do some work, but he suffered such pain that he fainted, and was sent home in a hack. During the week he was somewhat better, and visited his shop each day, suffering pain all the time, and occasionally working a little, but was unable to perform all of his duties because of pain, and after that he was compelled to remain in bed for some time. Held, he was totally disabled within the meaning of an accident policy insuring against total disability only." The clause in the policy was identically the same as is contained in the policy under consideration here.

In Thayer v. Insurance Company, 41 Atlantic Reporter, 182, the Supreme Court of New Hampshire said: "As long as one is in full possession of his mental faculties, he is capable of transacting *some parts* of his business, whatever it may be, although he is incapable of physical action. If the words 'wholly disable him from transacting any and every kind of business pertaining to the occupation under which he is insured' were to be construed literally, the defendant would be liable in no case, unless by the accident the insured should lose his life or his reason. Hooper v. Insurance Co., 5 Hurl. & N., 545. It is certain that neither party intended such a result. It can not be said as matter of law that the plaintiff's disability was not sufficient to entitle him to compensation under the terms of the policy."

In the case cited the evidence showed that the plaintiff's shoulder was accidentally injured by a fall, causing him pain and depriving him of the use of the arm. He was disabled thereby from attending to his business,—that of a shoe dealer,—although he went to his store two or three times a week. The policy insured the plaintiff "against loss of time * * * resulting from bodily injuries * * * which shall, independently of all other causes, immediately and wholly disable him from transacting any and every kind of business pertaining to the occupation under which he is insured."

The same language was contained in the policy under consideration in Insurance Company v. Gray, 26 Southern Reporter, 517, in which case the plaintiff was a physician and was injured by an accident while riding on an electric car, on June 25, 1896. He sued to recover indemnity for loss of time from his practice during July, August, and September of said year. The evidence showed he was often seen on the streets of Birmingham during said period of time, and between July 30 and September 29, 1896, he gave prescriptions in certain cases to the number of fifty, which were gathered from the drug stores and identified

and read in evidence; but *he* testified that he was wholly disabled from practicing his profession during said months, and did not charge for the prescriptions shown in evidence. The Supreme Court of Alabama, in June, 1899, reversed a judgment in his favor because the court allowed him to testify that he did not charge for the prescriptions, but said with reference to the sufficiency of the evidence to require the issue to be submitted to the jury: "There was evidence in support of the complaint, and it was sufficient not only to go to the jury, but to afford justification here for the refusal of the trial court to grant a new trial. There was no error in refusing to give the affirmative (peremptory) charge for defendant or in the denial of that motion."

In the case of Walcott v. Life and Accident Association, 8 New York Supplement, 263, the court say: "Total disability must, of the necessity of the case, be a relative matter, and must depend largely upon the occupation and employment in which the party insured is engaged. * * * If a person engaged in the general practice of medicine is unable to go about his business, enter his office, and make calls upon his patients, but is confined to the bed, as in this instance, and enabled only to exercise his mind on occasional applications to him for advice, he may be said to be totally disabled within the meaning of the provision of this policy."

Substantially the same view was taken of the question by the court in Baldwin v. Accident Association, 46 New York Supplement, 1016, where the court said, in discussing the meaning of a clause substantially the same as the one here under consideration, that the insured is wholly disabled when he is deprived of the power to perform substantially all the duties of the occupation under which he is insured, adopting the rational doctrine that substantial disability is total disability, which seems to me the only reasonable construction which can be given to such policies.

These cases are sufficient to show the trend of judicial decisions on contracts of the character sued on. The companies have all the time contended for a literal construction, while the courts have uniformly adopted a liberal and reasonable one. In every case above cited, if the literal construction contended for by the companies had been adopted by the courts, a peremptory charge should have been given to find for the defendant company, because the evidence in every instance was undisputed that the party injured was able to, and did, perform some business or duty pertaining to his occupation or profession, and was not *wholly disabled* within the strict sense of the terms from performing any and every kind of duty or business pertaining to his occupation or profession.

In this case Getzendanner's injury was one to the brain—to the mind. Within a few weeks he was judicially declared insane, confined in one of the lunatic asylums of the State, and is still hopelessly insane and so confined. It is agreed that the evidence was sufficient to authorize the jury to find that his insanity was produced by the accidental injury.

There can be no question that if this mental disorder existed to the extent named from the time of the accident, or substantially from the time of the accident, he was wholly disabled in every sense of the term. But I am of opinion that if a person is injured mentally to the extent and character that he can not perform some of the essential or material duties pertaining to his occupation or profession under which he is insured, which requires the exercise of a sound mind and good judgment, in a manner substantially or reasonably as effective as he could have done but for the injury, then he is wholly disabled within the meaning of this contract, and is entitled to recover the indemnity stipulated for in the policy.

The motion of appellee for a rehearing, in my opinion, ought therefore to be granted, and the judgment of the District Court affirmed.

*Affirmed.*