**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant,**

v.

**W. E. COOPER et ux., Appellees.**

**No. 14468.**

Court of Civil Appeals of Texas.

Houston.

Jan. 7, 1965.

Rehearing Denied Jan. 28, 1965.

Vinson, Elkins, Weems & Searls and James Greenwood, III, Houston, for appellant.

Winkelman, McCully & Christensen and John T. McCully, Houston, for appellees.

COLEMAN, Justice.

This is a suit for benefits under a group medical and hospitalization insurance policy. At the conclusion of all testimony, the trial court instructed a verdict for the plaintiff. The question to be determined is the existence or not of an issue of fact as to whether, on the date of the termination of her employment with the Bell Finance Company, Thelma M. Cooper was totally disabled, as that term is defined in the policy of insurance, and, if she was, whether such disability continued throughout the period for which benefits are claimed.

Appellant Insurance Company concedes that the date of termination of Mrs. Cooper's employment was April 14, 1960. Under the terms of the policy the coverage ceased automatically on the date of termination of the employment of the employee, subject to the provisions of the policy denoted "Extended Benefit Period", (found in Section L of Plaintiff's Exhibit 2), reading as follows:

"If, on the date his Major Medical Expense Insurance hereunder ceases, an employee is totally disabled as a result of an accidental bodily injury or disease as described above and is thereby prevented from performing any and every duty of his occupation, the covered medical expenses incurred by the employee after said date and during the continuance of such total disability shall be considered as having been incurred while insured under this coverage, for the purpose of determining a benefit before the end of the calendar year next following the calendar year in which his insurance ceased."

Similar provisions contained in insurance policies have been considered by the Supreme Court of this state in numerous cases. In the case of Commonwealth Bonding and Casualty Ins. Co. v. Bryant, 113 Tex. 21, 240 S.W. 893, the Court considered an accident policy providing benefits for total disability in the event the insured sustained bodily injuries through accident which would immediately, continuously, and "wholly disable and prevent the insured from performing any and every kind of duty pertaining to his occupation." The Court held that the insured was entitled to the benefits provided by the policy if his injuries rendered him "substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to his occupation."

This holding was subsequently approved in Great Southern Life Ins. Co. v. Johnson, Tex.Com.App., 25 S.W.2d 1093, where the Court quoted with approval from 6 Cooley's Briefs on Insurance, 5536: "It (total disability) * * * does not mean absolute physical disability of the insured to transact any kind of business pertaining to his occupation, but exists if he is unable to do any substantial portion of the work connected therewith." Both of these cases were quoted from and approved by the Su-

preme Court in Prudential Insurance Company of America v. Tate, 162 Tex. 369, 347 S.W.2d 556. See also Connecticut General Insurance Company v. Reese, Tex.Civ. App., 348 S.W.2d 549.

In Kemper v. Police & Firemen's Ins. Ass'n, Tex.Com.App., 44 S.W.2d 978, the court held that, "as a general rule it can be said that a person is totally disabled from the time of injury until the time of death when during all such time his condition is such that common prudence, and the exercise of ordinary care, would require him to desist from the performance of his duties." This case was cited with approval by the Supreme Court of Texas in Texas Employers' Insurance Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000, by the Commission of Appeals in Metropolitan Life Ins. Co. v. Wann, 130 Tex. 400, 109 S.W.2d 470, 115 A.L.R. 1301, opinion adopted, and by the Courts of Civil Appeals in numerous cases.

In the Wann case, supra, the court said:

"No general rule can be announced governing the question of when one is totally disabled to pursue a gainful occupation. The term total disability is relative depending, among other things, upon the capabilities of the insured. No distinction is made by the courts between an accident policy and a life insurance policy containing a disability clause. An injury which might render an uneducated laboring man unable to pursue a gainful occupation might not impair at all the ability of a professional or business man to do so. Kemper v. Police & Firemen's Ins. Ass'n (Tex.Com.App.) 44 S.W.(2d) 978; Winters Mutual Aid Association Circle v. Reddin (Tex.Com.App.) 49 S.W.(2d) 1095; Great Southern Life Ins. Co. v. Johnson (Tex.Com.App.) 25 S.W.(2d) 1093; Buis v. Prudential Ins. Co., 229 Mo.App. 190, 77 S.W.(2d) 127; Duhaime v. Prudential Ins. Co., 86 N.H. 307, 167 A. 269; Aetna Life Ins. Co. v. Person, 188 Ark. 864, 67 S.W.(2d) 1007."

The controlling issue in this case is whether an ordinarily prudent person in the exercise of ordinary care would have refrained from working under the same or similar circumstances. Whether it would have been physically possible for appellee to have worked was not an ultimate issue, but was merely evidentiary.

It is appellant's contention that a fact issue was raised by testimony that on April 14, 1960, the day of appellee's release from her first confinement in the hospital, she called to see whether she could return to work; that she gave a statement to an investigator for appellant in which she stated that she could have worked during the period between hospital confinements. It is argued that these bits of evidence are strengthened by the doctor's testimony that appellee was in better condition when she was released from the hospital the first time than she was when she entered the hospital, when this testimony is considered in light of the fact that she was able to do her work on the day prior to the first hospital confinement.

Appellee testified that while she was in a weakened condition, and was very nervous on April 14, since her leave of absence was over, she thought that she could have done some work and would have tried to do it. She also testified that she could not have done her work.

Appellee was employed as a clerk and her duties involved sitting at a desk, talking over the telephone, walking around, filing instruments and the like. The doctor testified that on April 14 appellee could walk and answer a telephone. This testimony, however, goes no further than to raise an issue of fact as to whether it was physically possible for appellee to perform some of the duties of her employment.

Only one doctor testified at the trial. It was his testimony that appellee was suf-

fering from Cirrhosis of the liver, complicated by retention of fluid in the general tissues of the body and specifically in the abdomen. He testified that the special diet she had while in the hospital, together with the medication and rest, improved her condition. He also testified that this disease caused a disturbance in the nutritional element causing the patient to feel bad and to become physically weaker. He testified that she was in no condition to return to work and that in his opinion if she had attempted it she would have collapsed. He also testified that her working would have aggravated the handling of her fluid. This testimony is significant in view of his testimony that her medical problem was very serious because of her tendency to accumulate fluid in the abdomen caused by an obstruction to the return venus blood in turn causing collateral circulation to carry the blood around the liver. He testified that oftentimes these veins in the gullet will dilate and become varicose, presenting the possibility of a rupture of one of the veins.

The doctor further testified that during the period between hospital confinements appellee was under his care; that she was given a high protein, low fat and high carbohydrate diet and was put on diuretics and other medications. Some of the medications were given daily by injection. On April 18 a minor operation was performed in his office for the removal of tissue for diagnostic purposes. On May 10 she re-entered the hospital and major surgery was performed, which admittedly disabled her for the remainder of the period for which benefits are claimed.

■ While as a general rule expert medical opinion is not binding on the jury and may be discarded in favor of opinions given by lay witnesses concerning many matters pertaining to sickness or good health, on some subjects only the opinions of experts have any value as evidence, since it cannot properly be assumed that laymen can form correct opinions either from their own knowledge and experience or from opinions expressed by lay witnesses. The diagnosis and proper treatment of the disease of cirrhosis of the liver would appear to be such a subject. Scott v. Liberty Mutual Ins. Co., Tex.Civ.App., 204 S.W.2d 16, writ ref., n. r. e.; Travelers Ins. Co. v. Blazier, Tex.Civ.App., 228 S.W.2d 217, writ dism.

■ In view of the uncontroverted medical testimony, the fact that appellee was physically able to perform the duties of her occupation, if we assume it to be true, would not raise an issue for the jury on the question of whether an ordinarily prudent person in the exercise of ordinary care would have refrained from working. That is a question concerning which, under the evidence in this case, reasonable minds could not differ.

Affirmed.