**OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA, Appellant,**

v.

**Robert L. DUNCAN, Appellee.**

No. 14470.

Court of Civil Appeals of Texas.

San Antonio.

May 18, 1966.

Rehearing Denied June 15, 1966.

Clemens, Knight, Weiss & Spencer, Theo F. Weiss, F. N. Welmaker, San Antonio, for appellant.

Groce, Hebdon, Fahey & Smith, Charles R. Shaddox, San Antonio, for appellee.

MURRAY, Chief Justice.

Appellee brought this suit against appellant for total disability benefits of four life insurance policies. The jury found that the appellee was totally disabled continuously since September, 1963, to the date of trial, July, 1965, and judgment was entered against appellant for combined benefits of $200.00 per month, waiver of premiums, penalty, and attorneys' fees, from which judgment Occidental Life Insurance Company of California has prosecuted this appeal.

Appellant's third point is to the effect that the trial court erred in overruling appellant's motion for new trial based on the misconduct of appellee in asking a juror for aspirins during the trial. We sustain this point, which requires that we reverse the judgment.

The record shows that during the trial and during a recess, a juror, Mrs. Elvira B. McDowell, was sitting on a bench five feet outside the door of the courtroom, directly across the hall from the water fountain, when appellee asked her if she had any aspirin. She took two aspirins from her purse and gave them to him, and he walked across the hall to the water fountain and took them. Appellee admitted that he heard the trial judge caution the jurors about not having any conversation with the parties, but stated he thought the prohibition pertained to discussion of the case. By asking for the aspirin, appellee was conveying to the juror that he was in pain and needed the aspirin to relieve his pain.

Just how much pain was suffered by appellee as a result of his injuries 'and whether he needed to take medicine for such pain was a question in the case and one to be considered by the jury. Under all the circumstances, this was misconduct on the part of appellee requiring a reversal of the judgment.

The record shows that after appellee had testified that he had asked juror Mrs. McDowell if she had any aspirin, and she had given him two, and that he had taken them in her presence, the following happened:

"THE COURT: Didn't you hear me carefully caution the jurors at the beginning of the trial not to even engage in casual conversation—

A No, I didn't—

THE COURT:—with any of the parties to the suit?

A I didn't understand that, sir.

THE COURT: You didn't hear that?

A I didn't understand that, sir.

THE COURT: Well, I said it very plainly.

A I'm sorry, I misunderstood you, your Honor.

THE COURT: Your conduct is reprehensible.

A Well, sir, I certainly apologize if there has been any—I've had no experience in this. But it was my honest interpretation, your Honor, that I couldn't discuss this case or couldn't be—

THE COURT: I didn't say anything about discussing the case. I did say that, too, but I also cautioned the jurors in your presence not to engage in conversation, not even casual conversation in the courtroom, in the hall or elevator or anywhere.

A I'm sorry I misunderstood and broke any rules.

MR. WEISS: Now, you know, Mr. Duncan, that during the course of the trial several of the doctors testified that you did not take any—that you had told them you didn't take any medication; you remember that, don't you? Just answer the question.

A  Well, I don't think I've ever said I didn't take any medication in this trial sir.

Q  But you heard the doctors testify that you told them that you did say that?

MR. HEBDON: Well, the record will stand for itself on that. The record is there, your Honor.

A  I do not take any narcotic. That is what I call medication.

(Witness Excused)"

The evidence further shows that the jury on the first vote stood eleven to one for a "yes" answer to the issue submitted which would have been favorable to appellee. Then, after some discussion in which Mrs. McDowell argued in favor of a "yes" answer, another vote was taken and it resulted in twelve for a "yes" answer.

In view of all the circumstances and facts herein, there is and should be presumed injury, and the verdict should not be permitted to stand. Rules 327, 434 and 503, Texas Rules of Civil Procedure, admonish that in jury misconduct cases a new trial should not be granted unless it reasonably appears from the evidence, both on the hearing of the motion and the trial of the case, and from the record as a whole, that injury probably resulted to the complaining party. Under the entire record we conclude there was probable injury to appellant.

In Texas Employers' Insurance Association v. McCaslin, 159 Tex. 273, 317 S.W.2d 916, the Supreme Court had this to say:

"* * * Rule 327 does not preclude the drawing of logical inferences of prejudice and unfairness from the overt act itself for an action or occurrence may be so highly prejudicial and inimical to fairness of trial that the burden of going forward with proof of harm is met, prima facie at least, by simply showing the improper act and nothing more. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115; Texas Employers' Ins. Ass'n. v. Haywood, 153 Tex. 242, 266 S.W.2d 856; Calvert, 'The Development of the Doctrine of Harmless Error in Texas' 31 Texas Law Review 1."

In view of the fact that there will have to be a retrial of this cause, perhaps the less we discuss the evidence the better, we will, however, give a general statement of the facts.

Appellee was engaged in the selling of labels as an independent contractor for Louis Roesch Company on a commission basis. Louis Roesch Company manufactures labels and appellee sells them, generally to canners. He has been in the label selling business for some twenty years. He was in an airplane accident on October 25, 1957, and was rather severely injured. Appellant paid him for total disability from the time of his accident until September, 1963, when it stopped payment. This suit by appellee followed.

Appellee was injured in his back, right knee and right foot. He was in the hospital for five months and thereafter confined to his home for some time. He still has pain in his back but has learned to live with it, his right knee is somewhat recovered. The problem he has now is with his right foot. The joints in the metatarsal section are fused, the pressure causes the joints in his foot to separate, and he wears a brace with a steel plate under his foot to relieve some of the pressure. Motion in that area of his foot causes pain. His right ankle is shorter and completely stiff. The ankle is solid bone. He can-

not walk up slopes; he once fell trying to negotiate a slope in Houston, a year and a half ago, calling on a customer. It caused a brain concussion. He has had numerous other falls, averaging one a month. He cannot negotiate rough terrain, wet ground, snow or ice. Uneven gravel surfaces are hard for him to walk on. It is difficult for him to get into some of the plants that have slopes. Before the accident he would run and catch trains, from time to time; now he cannot run. Prior to his accident he had a total of one hundred and ten accounts that he had sold at one time or another;

he now has only nineteen of these accounts remaining. He cannot follow through with his accounts because of his limited ability to travel long distances.

Before his injury he often drove his automobile 50,000 miles per year, and traveled a total of about 100,000 miles. Now he is unable to drive more than from 6,000 to 10,000 miles per year. A great deal of traveling is necessary in his business. The amount of gross income he had from Louis Roesch Company during the years listed below, the amount of his expenses and the amount of income remaining are as follows:

| Year | Gross | Expenses | Net Before Sick Pay Deductions |
|---|---|---|---|
| 1954 | $23,935.48 | $15,309.58 | $8,646.90 |
| 1955 | $18,799.87 | $16,095.51 | $2,704.36 |
| 1956 | $19,501.31 | $16,135.66 | $3,365.65 |
| 1957 | $22,070.17 | $16,215.82 | $5,854.35 |
| 1958 | $19,711.24 | $5,335.39 | $14,375.85 |
| 1959 | $13,159.71 | $1,771.93 | $11,387.78 |
| 1960 | $14,987.26 | $1,408.62 | $13,578.64 |
| 1961 | $13,657.82 | $5,385.21 | $8,272.61 |
| 1962 | $16,128.66 | $6,828.48 | $9,300.18 |
| 1963 | $18,307.07 | $12,070.63 | $6,236.44 |
| 1964 | $17,100.00 | $10,000.00 | $7,100.00 |
| ½ of 1965 | $4,726.00 | | |

The accounts that he developed in 1955, 1956 and 1957 paid off in income in 1958, 1959, 1960, and subsequent years. He has been unable to establish major accounts since the accident.

There is other testimony which we will not undertake to set out here.

■ Appellant's first point is that the trial court erred in refusing to grant appellant's motion for instructed verdict and motion for judgment non obstante veredicto because there is no evidence to support the finding of the jury that Robert L. Duncan was totally disabled continuously from September, 1963, to July, 1965. We overrule this point. It is not neces-

sary that appellee be immobile, bedridden or totally unable to work before he can recover under the policies herein involved. The test is, would a reasonably prudent person in appellee's condition in the exercise of ordinary care engage in his business.

In the very recent case of John Hancock Mutual Life Insurance Co. v. Cooper, 386 S.W.2d 208, Justice Coleman, speaking for the Houston Court of Civil Appeals, said:

"The controlling issue in this case is whether an ordinarily prudent person in the exercise of ordinary care would have refrained from working under the same or similar circumstances."

See also: Prudential Ins. Co. of America v. Tate, 162 Tex. 369, 347 S.W.2d 556 (1961); Great Southern Life Ins. Co. v. Johnson, 25 S.W.2d 1093 (Com.App. 1930); Connecticut General Ins. Co. v. Reese, Tex.Civ.App., 348 S.W.2d 549.

The evidence in this case, if believed by the jury was sufficient to support an affirmative answer to the issue submitted.

Appellant's fourth point is that the court erred in overruling appellant's exceptions to the court's charge and its definitions of total disability.

The policies of insurance defined total disability as:

"Disability shall be deemed to be total whenever the Insured becomes disabled as the result of injury or disease so as to be wholly unable to engage in any occupation and to perform any work for compensation or profit."

 The trial court in connection with the issue submitted to the jury gave the following instruction:

"In connection with the above question you are instructed that disability shall be deemed to be total whenever an individual becomes disabled as the result of injury or disease so as to be wholly unable to engage in any occupation and to perform any work for compensation or profit. It does not mean, however, an absolute physical inability to perform any of the duties pertaining to his occupation; but total disability, as inquired about in the above question, exists if such disability prevents the individual from substantially performing every essential operation necessary to the performance of his occupation."

This was a sufficient definition of total incapacity, and to have given the charge requested by appellant would have had the effect of relieving appellant of all obligations under the insurance contracts herein involved. Great Southern Life Insurance Company v. Johnson, supra.

The judgment is reversed and the cause remanded for a new trial.