**CONTINENTAL CASUALTY CO., Appellant,**

v.

**Richard M. KING, Appellee.**

**No. 7757.**

Court of Civil Appeals of Texas.

Amarillo.

Nov. 27, 1967.

Rehearing Denied Dec. 26, 1967.

Gibson, Ochsner, Harlan, Kinney & Morris and James H. Doores, Amarillo, for appellant.

Gordon, Gordon & Buzzard and Ross N. Buzzard, Pampa, for appellee.

NORTHCUTT, Justice.

This is a suit on an insurance contract providing a lump sum of $25,000.00 for total and permanent disability due to accidental injury. Plaintiff alleged an accidental injury to his heart on December 9, 1964, and total and permanent disability resulting therefrom. The case was tried to a jury upon special issues. In answer to the special issues, the jury found that plaintiff sustained an injury to his body on or about December 10, 1964; that plaintiff sustained total disability; that the injury was the sole cause of such disability; that such total disability had continued for a period of twelve consecutive months following December 19, 1964; that total disability began within 365 days following December 10, 1964; that total disability would be permanent from and after the end of the twelve months period following December 19, 1964; that total disability has been continuous from and after twelve months following December 19, 1964; that plaintiff gave written notice of claim within a reasonable time after the expiration of twenty days after the occurrence of the loss and that such injury inquired about was acci-

dental. Judgment was rendered in favor of the plaintiff upon the verdict of the jury. From that judgment, the defendant perfected this appeal. Hereafter, the defendant, Continental Casualty Company will be referred to as appellant and the plaintiff, Richard M. King, as appellee.

Appellant's first six assignments of error contend that appellee did not give proper notice as provided for in the policy and that the appellant did not waive its policy requirement requiring written notice by thereafter furnishing forms for proof of loss. The jury did not answer the issue inquiring if the appellant waived such notice but found that appellee gave written notice of claim within a reasonable time after the expiration of twenty days after the occurrence of loss. If notice was given within a reasonable time, no waiver by appellant was necessary. The provisions of the policy in question provides as follows:

PART VII  INADVERTENT ERROR
The insurance of an Insured Person shall not be prejudiced by the failure on the part of the Holder to transmit reports, pay premium or comply with any of the provisions of the policy when such failure is due to inadvertent error or clerical mistake.

PART VIII  UNIFORM PROVISIONS
NOTICE OF CLAIM: Written notice of claim must be given to the Company within 20 days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the claimant to the Company at 310 South Michigan Avenue, Chicago, Illinois 60604, or to any authorized agent of the Company, with information sufficient to identify the Insured Person shall be deemed notice to the Company.

CONFORMITY WITH STATE STATUTES: Any provision of the policy which, on its effective date, is in conflict with the statutes of the state in which the policy was issued is hereby amended to

conform to the minimum requirements of such statutes.

It would be necessary to determine if the insured sustained injury from an accident which caused total disability as defined in the policy independently of other causes with such disability commencing within 365 days from the injury and continuing for twelve consecutive months and being total and permanent and continuous at the end of such period.

On the day in question, appellee came home from work after completing his usual twelve hour day, cleaned up, watched T.V. and went to bed about 9 P.M. His employer called at 11 P.M. directing him to take his truck to unload another truck which was stuck in a ditch. It was a cold night and was raining. After leaving the pavement, he began to have trouble with mud balling under his trailer wheels. He was driving a five axle rig that weighed unloaded approximately 20,000 to 23,000 lbs.

Appellee testified in part as follows:

"Q. All right. Well, what would you do when the mud began to ball up?

A. I began to work the truck backwards and forth and tried to go forward as far as I could, and then back up to where I thought I could have—make more run and make more progress going forward, and one thing led to another until the tractor got out of control, and started jack-knifing, and then that's—

Q. (Interrupting) Did it have a tendency to jack-knife before that?

A. Well, it had a tendency to jack-knife most any time in the mud.

Q. Did this require a good deal of effort on your part?

A. Yes.

Q. How would it require effort?

A. Because you are sitting there in a strain, working the truck with the throttle and the clutch and your gears, shifting.

Q. All right. After the truck did jack-knife, what happened, please?

A. I shut her down and called them over the two-way radio that I had came as far as I could go and they'd have to send a caterpillar down the road after me, pull me up to where they were.

Q. Just after it jack-knifed, did you have any pain?

A. Yes.

Q. How did it feel?

A. Well, I began to—my chest began to tighten up and perspiration started breaking out, and I was getting short of breath, couldn't get my breath. I immediately turned the heater off and rolled my glass down, and that helped, but I didn't—for the next 15 or 20 minutes, I never—it took me about that long to get a decent breath.

Q. Did you say you broke out in a sweat?

A. Yes, I broke out in a clammy sweat.

Q. All right. Did you say you radioed for help?

A. Yes.

Q. Who did you radio?

A. The terminal manager, which was Royce McDiver.

Q. And what did you tell him?

A. I told him he'd have to send a caterpillar up there to pull me on down there, that I had came as far as I could go.

Q. Then, what did you do?

A. Well, he told me he'd send help up there, and I just shut it—I didn't even— I didn't try any more. I just laid over the steering wheel and tried to relax, get to feeling a little better while I was waiting on the cat to come and get me.

Q. Do you know how long it took the cat to get there?

A. Oh, in the neighborhood of 20 to 35 minutes.

Q. And then, what did you all do?

A. Well, there was a boy hooked the cat on to me, and then we went down the road to where the other truck was.

Q. Then, what happened?

A. Then, we got out and took the two hoses from the two trucks and hooked up the two pumps together and unloaded his truck on to mine.

Q. Did you make any comment to Mr. McDiver about your trouble there and what happened to you?

A. Yes.

Q. And what did you tell him?

A. I told him that something had happened back up the road that had never happened to me before, and I didn't have any idea what it was or nothing, and so we just—he didn't question me no more about what—other than, he asked me, when we finished and put our hoses back in each one of our trucks, he asked me how I was feeling, and I said, "Well, I don't feel sick at my stomach, or anything like that", but I said, "Every time I bend over and raise up, I'm dizzy; I'm weak, but I'm not like I was going to throw up or sick at my stomach". I just had still a hurting feeling in my chest and my breathing was awful short, but I wasn't, as far as being sick, outside of that, I wasn't sick, but I was—dizziness, is what I was, and weakness.

Q. Did you drive out of there?

A. No, sir.

Q. How did you get out of there?

A. We came back in the car.

Q. Whose car?

A. The terminal manager, Royce Mc-Diver's car.

Q. Who did you ride with? Did he drive or did you drive?

A. No, he was driving."

Appellee did not go to work the next day after his injury but went to see Dr. Hackley who examined him and after treating him gave him a prescription. After two or three days, he went to Pampa to see Dr. Ashby, his family doctor, and after examining appellee, Dr. Ashby put him in the hospital where he remained for ten days and after he was out of the hospital, he visited Dr. Ashby every two weeks the first month and then three weeks and then once a month. After a certain length of time, Dr. Ashby consented for him to go back to work on condition that he rest and not exert himself. Appellee went back to driving a truck about the first of March, 1965 doing the usual work and drawing the same compensation as before the injury and continuing until January 29, 1966, which was the last time he drove a truck. At that time, on February 4, 1966, Royce McDiver, terminal manager for appellee's employer, required appellee to go to Dr. Kleeburg for an I.C.C. physical examination. Dr. Kleeburg made his examination and told appellee to return to work and to continue with his duties until appellee heard from him but his employer would not permit appellee to go back to work until Dr. Kleeburg made his report. About a week or ten days after February 4, 1966, there was a conference with Dr. Kleeburg and Royce McDiver. Aubrey Covington and appellee were present at this conference. Dr. Kleeburg refused to pass appellee for employment to drive a truck because his heart damage was too severe and said appellee should not exert himself at all. On or about March 12, 1966, appellee contacted his attorney about this claim and on March 14, 1966, the appellee's attorney by letter first notified appellant of this claim.

It is appellant's contention that appellee was obligated to give appellant notice of the

accident within twenty days after the accident or a reasonable time thereafter and appellant was not liable because appellee failed to comply with the terms of the policy requiring such notice. It is true that it was some 459 days from the accident until appellant was notified thereof.

It is appellee's contention that since the policy provided that written notice was to be given within twenty days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as reasonably possible, and since he had been directed by the doctors to go back to work, and neither the doctors nor his employer had given him any cause to worry, that it was not until February 15, 1966 that appellee realized his condition and that it was then that the loss commenced and that he gave notice thereafter in a reasonable time.

It is stated in Vol. 45 C.J.S. Insurance § 985b as follows:

"The time allowed by an accident policy for giving notice generally begins to run when the particulars or result of an accident are ascertained, where they are not immediately apparent. The time allowed by the policy for giving notice begins to run when the particulars or result of an accident are ascertained, where these are immediately apparent."

With the exception of the ten days appellee was in the hospital immediately after the accident, he was informed by the doctor to continue with his regular work. He was finally notified of his true condition on or about February 15, 1966. Dr. Falkenstein testified appellee was totally disabled and then later stated he was totally disabled in his opinion as a truck driver. The doctor also testified that appellee's disability began the night he was driving the truck and suffered the coronary occlusion. It is stated in American Guardian Insurance Company v. Rutledge, Tex.Civ.App., 404 S.W.2d 847 as follows:

"(2) Reasonable time within which notice of the occurrence or commence-

ment of any loss covered by the policy must be given by insured to insurer depends on individual facts and circumstances of each particular case. International Underwriters Insurance Company of America v. Sherwood, 228 F. Supp. 465 (D.C.1964); 18 A.L.R.2d 466; Simmons v. Western Indemnity Co., 210 S.W. 713 (Tex.Civ.App.) 1919, n.w.h.; Meers v. Frick-Reid Supply Corporation, 127 S.W.2d 493 (Tex.Civ.App.) 1939, writ dism., judg.corr.; Ridglea Interests, Inc. v. General Lumber Company, 343 S.W.2d 490 (Tex.Civ.App.) 1961, writ ref., n.r.e.; Clevenger v. Potlatch Forests Inc., 85 Idaho 193, 377 P.2d 794, 799, 1963.

(3) That which constitutes a reasonable time is a question of fact or, at least, a mixed question of law and fact and depends upon the circumstances surrounding the case which the principle is sought to be applied. What would be a reasonable time in one case might be wholly inadequate to shut off the rights of parties in a different case or under different circumstances. Meers v. Frick-Reid Supply Corporation, supra; Houston & T. C. R. Co. v. Roberts, 101 Tex. 418, 108 S.W. 808; Armstrong v. Federal Supply Co., 17 S.W.2d 170 (Tex.Civ. App.) 1929, n.w.h.; Simmons v. Western Indemnity Co., supra; Allstate Insurance Company v. Darter, 361 S.W.2d 254 (Tex. Civ.App.) 1962, n.w.h.; International Underwriters Insurance Company of America v. Sherwood, supra."

The trial court submitted the following issue to the jury:

"Do you find from a preponderance of the evidence that the plaintiff gave written notice of claim within a reasonable time after the expiration of twenty days after the occurrence of loss, if any?"

■ In connection with that issue, the court instructed the jury that the term "within a reasonable time", as that term was used, meant that time in which a person of ordinary prudence acting under the same

or similar circumstances, would have or should have given notice. The jury answered the issue yes.

In this case the policy as well as Art. 3.70-3(A)(5) Insurance Code V.A.T.S. provides written notice of claim must be given to the insurer within twenty days after the occurrence or commencement of any loss covered by the policy. Appellee continued to work as instructed by his doctors to do at his same job and doing the same work as he was doing before the accident and making the same income. Consequently, there was no loss until he was finally stopped by order of the doctor in February, 1966. Appellee testified it was about February 15, 1966, when he realized his condition. Written notice was mailed to appellant on March 14, 1966. The delay in filing for workmen's compensation by this same appellee is discussed in King v. Texas Employers' Insurance Association, Tex.Civ.App., 416 S.W.2d 533 n.r.e.

It is stated in Continental American Life Insurance Company v. McCain, Tex. Civ.App., 412 S.W.2d 666 as follows:

"(1) Plaintiff admits no written notice was given defendant within 20 days after he was injured at its Houston office, but plaintiff contends this provision in the policy is void because of Article 5546, Vernon's Ann.Civ.St., which reads in part as follows:

"No stipulation in a contract requiring notice to be given of a claim for damages as a condition precedent to the right to sue thereon shall ever be valid unless such stipulation is reasonable. Any such stipulation fixing the time within which such notice shall be given at a less period than ninety (90) days shall be void, and when any such notice is required, the same may be given to the nearest or to any other convenient local agent of the company requiring the same."

Plaintiff also contends that he acted as a reasonable prudent person, and that this is all he was required to do in order to comply with that part of the policy quoted in this opinion, which specifically reads as follows:

"* * * Failure to furnish notice or proof within the time fixed in this Policy will not invalidate or reduce any claim if it shall be shown that it was not reasonably possible to furnish such notice or proof on time and that it was furnished as soon as was reasonably possible."

The court submitted special issue No. 1, which reads as follows:

"Do you find from a preponderance of the evidence that the plaintiff Jessie McCain acted as a reasonably prudent person under the same or similar circumstances would have acted, with reference to the furnishing of notice and proof of loss to the defendant?

"Answer 'yes' or 'no'

"Answer: *Yes*"

We interpret this policy of insurance to require a claimant to exercise reasonable diligence in filing a notice of injury and claim. The finding of the jury satisfied this requirement. These points are overruled."

■ That holding was approved by the Supreme Court in the same case at 416 S.W.2d 796. See also McCormick & Ray, Texas Law of Evidence, Page 595, Sec. 799, Texas Employers' Insurance Association v. Little, Tex.Civ.App., 96 S.W.2d 677 writ dismissed. We overrule appellant's first six assignments of error.

■ By appellant's points of error 7 through 21, it is contended that it was necessary for the appellee to establish that he sustained bodily injury by accident; that as the result of such injury he was totally and permanently disabled and prevented from enjoying in each and every occupation or employment his compensation or profit

for which he was reasonably qualified by reason of his education, training and experience; that total and permanent disability commenced within 365 days of the date of the accident; that such disability has continued for a period of 12 consecutive months from date of its commencement and that at the end of such twelve months period such disability was total, continuous and permanent; and that appellee failed to sustain this burden. The jury answered those issues favorable to appellee and contrary to the contention of appellant and we hold such findings were based upon sufficient evidence. Beside the evidence above mentioned, Dr. Falkenstein testified it was his opinion that appellee sustained an injury to his heart on or about December 10, 1964 and that he sustained an occlusion of one of the blood vessels supplying the heart with blood. Dr. Falkenstein further testified as follows:

"Q. Do you think he is totally disabled within that definition and with that admonition about what his qualifications—

A. (Interrupting) His qualifications, yes, he is totally disabled.

Q. Now, Doctor, go ahead and explain what you wanted to explain.

A. I wanted to say that he is totally disabled, in my opinion, as a truck driver.

Q. And why, please?

\* \* \* \* \* \*

A. Oh, I see. The person who has sustained the coronary occlusion or myocardial infarction, should refrain and must refrain from strenuous activities; must refrain from being put into situations where he might have to use strenuous actions, muscle power, in order to handle the situation.

\* \* \* \* \* \*

"Q. Would you pass this man for a pre-employment physical as a truck driver?

A. No, I would not.

Q. And why not?

A. Because a person with evidence of a coronary occlusion is not a safe person to be in charge of heavy duty equipment.

Q. Now, Doctor, I want to ask another question, based on an assumption of the truth of those same facts, and that question is do you have an opinion as to whether the injury that you have described was the sole cause of the disability that you have described, and I want, in that connection, for you to assume that the term 'sole cause' means that cause which directly and independently of all other causes, results in disability. Now, do you have an opinion about that, please?

A. The coronary occlusion is the cause of his disability, period.

Q. Now, Doctor, I want you to assume the same facts and ask you if you have an opinion as to whether or not Richard King's disability has continued for a period of 12 months since December 10th, 1964, just on the assumption of the truth of the facts that I gave you?

A. Well, I don't think his disability has ever ceased.

Q. All right. Now, do you have an opinion, then, as to whether or not his disability began within 365 days following December 10th, 1964?

A. The disability began the night he was driving the truck and suffered the coronary occlusion.

Q. Now, do you have an opinion as to whether or not this total disability will be permanent from and after the end of 12 month period? In that connection, I want you to assume that permanent means 'continuing throughout the remainder of one's life.'

A. The disability will continue. He has had a coronary occlusion, and it is still evident in the electrocardiogram, and we will find this ten years and more from

now, giving evidence in the electrocardiogram also."

Dr. Ashby testified that based upon the history he acquired as to the events of the night when appellee was out with the truck and in the mud, it was his opinion those events definitely were a precipitating factor causing the heart trouble and that it was his opinion the injury to the heart muscles occurred on Thursday night when appellee was working with his truck on the muddy road.

█ The appellee's occupation was that of a truck driver which he had followed for several years and a heart injury is a serious condition. Total disability is necessarily a relative matter and must depend chiefly on the peculiar circumstances of each case and on the nature of the occupation or employment and the capabilities of the person injured. It does not mean absolute physical disability of the insured to transact any kind of business pertaining to his occupation but exists if he is unable to do any substantial portion of the work connected therewith. Jefferson Standard Life Insurance v. Curfman, Tex.Civ.App., 127 S.W.2d 567, writ dismissed; John Hancock Mutual Life Insurance Company v. Cooper, Tex.Civ.App., 386 S.W.2d 208, no writ history; Kemper v. Police & Firemens Insurance Association, 44 S.W.2d 978, Commission of Appeals.

It is stated in Prudential Life Insurance Company of America v. Tate, 162 Tex. 369, 347 S.W.2d 556, as follows:

"The language of the policy is fairly and justly susceptible of the interpretation, which, we think, should be given to it, that the larger (total) indemnity was promised if the injuries rendered the insured substantially unable, in the exercise of ordinary care, to perform every material duty pertaining to his occupation. Fidelity & Casualty Co. [of New York] v. Getzendanner, 93 Tex. 487, 53 S.W. 838, 55 S.W. 179, 56 S.W. 326; Fidelity & Casualty Co. v. Joiner (Tex.Civ.App.)

178 S.W. [806,] 808 (W. of E. ref.); North American Accident Ins. Co. v. Miller (Tex.Civ.App.) 193 S.W. 755 (W. of E. ref.); 14 R.C.L. 1316; 5 Joyce on Insurance (2d Ed.) § 3032(c); Foglesong v. Modern Brotherhood of America, 121 Mo.App. 548, 97 S.W. 240; Lobdill v. Laboring Men's Mutual Aid Ass'n, 69 Minn. 14, 71 N.W. 696, 38 L.R.A. 537, 65 Am.St.Rep. 542. * * *"

We overrule appellant's points of error 7 through 21. We have carefully considered all of appellant's assignments of error and overrule all of them. Judgment of the trial court is affirmed.