Christine M. EASTER, Appellant,

v.

**MUTUAL OF OMAHA INSURANCE COMPANY, Appellee.**

No. 6487.

Court of Civil Appeals of Texas, El Paso.

March 3, 1976.

Rehearing Denied March 24, 1976.

Schwartz & Earp, Larry H. Schwartz, El Paso, for appellant.

Scott, Hulse, Marshall & Feuille, Frank Feuille, IV, R. H. Feuille, El Paso, for appellee.

## OPINION

WARD, Justice.

The insured, Mrs. Christine M. Easter, seeks appellate relief from the summary judgment granted against her suit to recover for sickness benefits afforded under an insurance policy. The grounds for summary judgment were that the disability arose after the coverage afforded by the policy had terminated and that there was a defective compliance with the notice requirements of the policy. The judgment of the trial Court is reversed and the cause is remanded for trial.

Mrs. Easter alleged in her petition that she held a policy of "retirement disability insurance" with the defendant, Mutual of Omaha Insurance Company, and that she paid the required premiums until "said policy lapsed on June 1, 1973"; that while the policy was in force, she became disabled and under the terms of the policy was entitled to benefits of $4,800.00. The defendant answered with a general denial. It then filed its unsworn motion for summary judgment to which it attached photostatic copies of a sample copy of an insurance policy referred to in its motion as the plaintiff's policy, a photostatic copy of an application for insurance purportedly executed by Mrs. Easter and photostatic copies of physician's statements and reports of disability. The defendant's summary judgment proof further consisted of the plaintiff's deposition to which are attached two letters addressed to her. One of these letters was from the Insurance Director of the National Federation of Federal Employees, dated March 1, 1973, and informed her that the National Federation was withdrawing its sponsorship of the insurance program written by Mutual of Omaha and in favor of a plan underwritten by Boston Mutual Insurance Company. It urged her to enroll in the new plan which it stated would be effective May 1. The other instrument was a letter sent to her on Mutual of Omaha stationery purportedly written by a vice president of that Company and advised her that her existing coverage would expire on a date which is not disclosed and solicited her participation in an individual program.

The Appellant filed an argument in opposition to the Motion for Summary Judgment to which she attached her affidavit which was consistent with the statements contained in her deposition. She stated that she had been employed as a dental assistant by the Federal Government for

many years. In 1972, she became afflicted with a circulatory problem called Raynaud's Disease. In July 1972, she was advised by one of her doctors that she was totally and permanently disabled. The disease caused a general numbness to her fingers and increased sensitivity to heat and cold and an inability to hold on to instruments. She continued to work as she hoped her doctor was wrong. By December 1972, she had become unable to perform all of her duties as a dental assistant but had continued in the dental clinic working as an office secretary. On March 6, 1973, she applied for a disability retirement from the Government and on May 25 she took a "fitness for duty" physical examination. She continued working in the dental clinic as a secretary until June 20, 1973. This was her last day of work and on August 4, 1973, the Civil Service Commission notified her that she was retired effective July 27, 1973. Within three or four days after receiving this notification, she telephoned the local office of Mutual of Omaha and notified them of her disability. Coverage was denied.

As to the sickness benefit provisions of the sample policy, the following pertinent provisions are noted. Under "Exceptions" there is the provision that "Benefits are not payable for loss: (a) beginning while this policy is not in force * * *". Under policy "Definitions", there are provisions that "Loss" means loss of time, medical treatment, confinement in a hospital * *. "Sickness" means sickness causing loss while this policy is in force. "Total loss of Time" means that period of time during which the insured is unable to perform each and every duty of his occupation and receives medical treatment; provided, however, after the first twelve months of such period of time, it also means that period of time during which the Insured is unable to engage in any other gainful work or service for which he is reasonably fitted by education, training or experience. Under the paragraph entitled "SICKNESS BENEFITS, Sickness Total Loss of Time Benefit," it is provided "When the Insured contracts a sickness which requires medical treatment and results in total loss of time, the Compa-

ny will pay benefits"—for a total period of two years at $200.00 a month after a deductible period of seven days.

While the copy of the insurance policy and the other exhibits are neither sworn nor certified copies as required by Rule 166–A, Tex.R.Civ.P., the Appellant has made no complaint thereto either in the trial Court or on this appeal. However, a complete understanding of the controversy is prevented as there is no proof as to how or when the coverage of the policy was terminated. The proof shows the policy to be term insurance with premiums being paid annually and with the last renewal premium being paid, when due, on December 1, 1972, according to the Appellant. This would keep the policy in force until December 1, 1973. Just how the National Federation of Federal Employees was able to control the contractual coverage between Appellee and Appellant is likewise not disclosed. However, the Appellant, by her pleadings, judicially admitted the termination of the coverage on June 1, 1973, and this is accepted.

The Appellant's first point is that genuine factual issues exist that Appellant became permanently disabled while the coverage existed. The Appellee, as movant for the summary judgment, had the burden of demonstrating the absence of any genuine issue as to this material fact or any other essential element of the plaintiff's cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.1970). Under the admission made by the Appellant in her petition, it became the Appellee's burden to show as a matter of law that the disability, as defined by the policy, did not begin until after June 1, 1973. Appellee argues that this was established by the opinion of the doctor who gave the Appellant her "fitness for duty" examination on May 25 who stated that although she was then unfit for work as a dental assistant, she was not then medically disabled from other types of employment and further, by the Appellant's own admission, that she was able to work until June 20. This medical opinion is of no help to the Appellee. The opinion testimo-

ny of this expert witness is not binding upon a trier of the facts and it will not support a summary judgment. *Broussard v. Moon*, 431 S.W.2d 534 at 537 (Tex.1968). Also, the unsworn report of the doctor was mere hearsay and incompetent. *Box v. Bates*, 162 Tex. 184, 346 S.W.2d 317 (1961).

The policy before us is not like the usual group insurance policy which lapses upon termination of employment. Cf. *Aetna Life Insurance v. Barnes*, 361 F.2d 685 (5th Cir. 1966). It is term insurance with disability benefits payable for "total loss of time" which is defined by the policy as "that period" of time during which the insured is unable to perform each and every duty of his occupation and receives medical treatment * * *." Appellant's continued employment past the expiration date of June 1, 1973, while a matter to be considered, does not absolutely control. The continued earning of money under certain "loss of time" policies conceivably could foreclose a recovery of benefits. Such a policy is referred to in the discussion in *Combined American Ins. Co. v. Morgan*, 214 S.W.2d 145 (Tex.Civ.App.—El Paso, no writ). Under the present policy in evidence with the broad policy definition of total loss of time, the policy is one of loss of capacity to work and not one of indemnity against mere loss of income. 32 Tex.Jur.2d Insurance, Sec. 337. The decisions have gone far in upholding verdicts for total disability where the claimant has worked and suffered no loss of wages during the period of claimed disability. *John Hancock Mutual Life Insurance Company v. Cooper*, 386 S.W.2d 208 (Tex.Civ.App.—Houston 1965, no writ); *Benefit Ass'n of Ry. Employees v. O'Gorman*, 195 S.W.2d 215 (Tex.Civ.App.—Fort Worth 1946, writ ref'd n. r. e.). See Annotation 31 A.L.R.2d 1222. The Appellant's first point is sustained.

The second point is that a genuine issue of fact existed that the Appellant complied with the terms of the policy in giving notice of her claim. The policy requires written notice of claim be given within twenty days after the commencement of any loss covered by the policy or as soon thereafter as reasonably possible.

■■ The oral notice was not given until August 1973, and the Appellant admits she delayed in giving notice because she thought she needed a disability finding by the Civil Service Commission before she could proceed with her claim against the Appellee. Such length of time has been held to be excessive. *Kellum v. Pacific National Fire Ins. Company*, 360 S.W.2d 538 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.). Such a holding usually occurs in accident policy cases where there is one traumatic event that calls for a more immediate notice. Illnesses, on the other hand, may develop and increase in extent over a protracted period of time and it is often difficult to determine at just what moment the extent of the resulting disability becomes such that a claim for payment can be made. Likewise, the notice required is one of reasonableness in relation to the particular loss and depends upon all of the circumstances surrounding the particular case. *Atteberry v. Allstate Insurance Company*, 461 S.W.2d 219 (Tex.Civ.App.—El Paso 1970, writ ref'd n. r. e.); *Continental Casualty Co. v. King*, 423 S.W.2d 395, 399 (Tex.Civ.App.—Amarillo, 1967, writ ref'd n. r. e.). The test used as to notice is what would have been done by the ordinary prudent person in the exercise of ordinary care in the same or similar circumstances. *Allstate Insurance Company v. Darter*, 361 S.W.2d 254 (Tex.Civ.App.—Fort Worth 1962, no writ). Inquiry as to reasonable conduct is ordinarily a question of fact and a summary judgment is improper. *Odom Dante Corp. v. Sharpe*, 483 S.W.2d 452 (Tex.1972); 4 McDonald, Texas Civil Practice, 17.26.12 at 177. A fact question is presented in this case and the second point is sustained.

As to the form of the notice, the Appellant's proof as to the denial of liability injects an issue of waiver into the case which may be developed after amendment of the pleadings and upon conventional trial. *Womack v. Allstate Insurance Company*, 156 Tex. 467, 296 S.W.2d 233 at 237 (1956).

The judgment of the trial Court is reversed and the case is remanded for trial.